**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Daniel Luna-Gonzalez,<br>　　　　Petitioner,<br>v.<br>Kristi Noem, et al.,<br>　　　　Respondents. | No. CV-25-03794-PHX-MTL (DMF)<br>**ORDER** |

Petitioner filed an Amended Verified Petition for Writ of Habeas Corpus under § 2241 challenging his immigration detention.[1] (Doc. 12.) Petitioner also filed an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction. The Court denied the request for ex parte relief and ordered expedited briefing of the Petition and Motion for Preliminary Injunction. (Doc. 5.) The Amended Petition and Motion are fully briefed. (Docs. 11, 14, 15, 18.) For the reasons that follow, the Amended Petition is granted, and Respondents must either release Petitioner from custody or provide a bond hearing within ten days.

**I.   Background**

Petitioner states he was born in Mexico in 1997 and brought to the United States in 1999. (Doc. 12 ¶ 25.) Petitioner has Deferred Action for Childhood Arrivals ("DACA") status, which is valid until October 15, 2026. (*Id.* ¶ 26.) On June 20, 2025, Petitioner was involved in a traffic stop, arrested for being in the United States without proper documents,

---
[1] Petitioner's Amended Petition is substantively identical to his original Petition except that it names a previously unidentified John Doe Respondent.

and transferred to immigration detention. (*Id.* ¶ 3.) On July 2, 2025, DHS issued a Notice to Appear charging Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* ¶ 6.)

A July 8, 2025 policy guidance memorandum issued by Acting ICE Director Todd Lyons announced that DHS had revisited the government's legal position on detention and release authorities. Under this "revisited" legal position, noncitizens present without admission are now subject to mandatory detention under 8 U.S.C. § 1225(b), rather than discretionary detention under 8 U.S.C. § 1226(a), because, under 8 U.S.C. § 1225(a)(1), they are deemed applicants for admission. (Doc. 12 at 3 n.11.)

Petitioner requested a custody redetermination before an Immigration Judge ("IJ"). The IJ denied the request on the basis that he lacked jurisdiction to grant Petitioner bond because DHS classified him as being detained under § 1225(b)(2). (Doc. 1, Ex. 8.)

Petitioner alleges his arrest violated the Fourth Amendment and 8 U.S.C. § 1357(a)(2); and his detention violates the Administrative Procedures Act, the *Accardi* doctrine, and his substantive and procedural due process rights. (Doc. 12 at 16-22.) He seeks release from detention and an order declaring his arrest and continued detention are unlawful.

**II.     Analysis—Interpretation of 8 U.S.C. § 1225 and 8 U.S.C. § 1226**

Respondents state they "are aware of a prior ruling in this District rejecting [Petitioner's] arguments, *see e.g., Francisco Cerritos Echevarria v. Pam Bondi*, et al., 2:25-cv-03252-DWL-ESW, (D. Ariz. Oct. 3, 2025), but [] respectfully maintain that Petitioner has not been deprived of due process, and falls within the definition of an 'arriving alien' warranting mandatory detention as the removal process unfolds. Respondents also respectfully maintain that a person is an 'applicant for admission' until an immigration official has inspected that person and determined that they are admissible into the United States." (Doc. 11 at 12.)

Among other things, Respondents contend that *Echevarria* did not "consider other pieces of statutory context." (*Id.*) The Court respectfully disagrees, as *Echevarria* contains

an extensive discussion of the statutory context. *Echevarria*, 2025 WL 2821282 at *5 ("Although [Respondents'] approach has surface appeal, the Court perceives at least two problems with it: first, it ignores some of the additional requirements imposed by § 1225(b)(2)(A); and second, it fails to account for the broader statutory scheme, particularly in light of how that broader scheme has been interpreted by the Supreme Court."); *id.* at *7 ("Putting aside these textual problems with Respondents' position, Respondents' narrow focus on § 1225(a)(1) also ignores the complexities of interpreting the INA, a dense statute . . . which must be interpreted against the backdrop of our constitutional principles, administrative law, and international treaty obligations. Divining its meaning is ordinarily not for the faint of heart. To that end, in determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme.") (cleaned up). Nothing in Respondents' brief persuades the Court that this analysis was mistaken.

The Court is aware of several decisions adopting Respondents' argument. *Valencia v. Chestnut*, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025); *Alonzo v. Noem*, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); *Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Rojas v. Olson*, 2025 WL 3033967 (E.D. Wisc. Oct. 30, 2025); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, Doc. 9 (N.D. Tex. Oct. 24, 2025); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025), *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Pipa-Aquise v. Bondi*, No. 25-1094, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025). But it is unsurprising that judges across the country are not in full agreement on how this issue should be resolved. It is also fair to note that Respondents' view represents the minority position—in the weeks since Judge Lanza considered the issue in *Echevarria*, dozens of other courts have reached the same conclusion. *See, e.g., Quinapanta v. Bondi*, 2025 WL

3157867, *6 (W.D. Wisc. Nov. 12, 2025) ("[M]ore than 45 district courts have now rejected similar arguments made by respondents here and ordered bond hearings for noncitizens who, like petitioner, were apprehended within the United States years after entering without admission or inspection unless implicated by any criminal activity covered by § 1226(c). These decisions, along with a growing number of others now including this court have concluded that the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support its application to noncitizens in petitioner's position.") (cleaned up). Having reviewed the recent decisions adopting the minority view, the Court agrees with the conclusion reached by Judge Lanza in *Echevarria*. For these reasons, the Petition is granted as to Petitioner's Fifth Claim for Relief, and Petitioner must receive a bond hearing under 8 U.S.C. § 1226(a).[2]

…

---

[2] Because the Court grants relief as to the Fifth Claim for Relief, it will deny the remainder of the Petition as moot.

**IT IS THEREFORE ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted as to Petitioner's Fifth Claim for Relief**. The remainder of the Petition is denied as moot.
2. Respondents must provide Petitioner a bond redetermination hearing within **ten days** or release him from custody under the same conditions that existed before his detention.
3. Respondents must provide a notice of compliance within **three days** of releasing Petitioner or providing him a bond hearing.
4. All remaining motions are denied as moot.
5. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 26th day of November, 2025.

Michael T. Liburdi
United States District Judge